state of Carolina. Respect you may proceed. Thank you. Good afternoon, your honors. My name is Anne Fick. I am from the office of the state appellate defender and I represent the defendant appellant, Kurt Nash. May it please the court. According to the D.O.C. website, Mr. Nash is scheduled to be paroled on July 26, 2019. Had he received effective assistance of counsel, he would be getting out of prison 193 days sooner, or about January 14, 2019. In fact, in your brief, you didn't note that the defendant's plea was to an amended charge as a result of lengthy and aggressive plea negotiations by defense counsel, correct? You don't note that in the brief. OK, I didn't realize that, but that was. Did you read the record? Yes, I did, your honor. Did you read all the negotiations? Well, the ones that were on the record. The ones that were on record from July, from June 15 to the defendant eventually pled to a class one probation will offense with an agreement to serve a minimum of six years. Correct. Isn't that relevant to our consideration of defense counsel's overall performance? Certainly. And would you agree that in evaluating a claim of ineffective assistance of counsel, we don't look at counsel's conduct in isolation, but the overall performance? Correct. Agreed. Several witnesses testified in litigation to the defendant's good behavior while he was on bond, correct? Correct. And the trial court took that into consideration in sentencing the defendant, correct? Correct. Would those witnesses that even have been possible, if the defendant had been returned to Lake County Jail instead of going on and living in Wisconsin with family? Yes. How so? They, I'm sorry, could you kind of rephrase your question? Well, what was the strategy? What was counsel's strategy? As far as negotiating and having this become a pretense of armed violence? Yes. And in terms of demonstrating mitigation at an eventual sentencing hearing, which the trial court referred to, correct? The trial court referred to that and said this was strategy. This is what you intended. Yes, the trial court did. And as a matter of law, you agree, would you not, that absent compelling circumstances, the defendant should have been discharged from bail? I disagree in this circumstance because there was three pending felonies. And the way the 604A3 is written would seem to negate the purpose of it. And there was no way that he was going to be released. When the... There was a state appeal. As a matter of law, he's to be discharged unless a court finds compelling circumstances. And even defendants charged with murder are entitled to be discharged from jail or bond pending appeal unless there's a showing of compelling reasons to hold the defendant. Here, was there a hearing? There was not. 604A3 is not automatic. And it's to be heard or brought up by the official charging. That was never brought up and it was never asked. Right, the state never asked for that. Correct. So Mr. Nash remained in custody on the three felony cases until October 31st, 2014, when he was released on MSR. Would you agree that counsel's overall performance was excellent in terms of what result he got for the defendant? It was good. It was very good, right? It was outstanding. It was good. Yes, it was because the defendant was facing a minimum of 15 years in the state. If the defendant was on appeal, his motion to suppress his guilty finding was inevitable. It was a very strong case. Would you agree? Not necessarily, your honor. No? The gun in the car was not necessarily absolute evidence of possession at that time. The circumstances... How about the defendant's attempt to escape from the back of the squad car? That would have helped, right? Excuse me? That would have helped the state. Yes. Okay. And that was not suppressed. Why was counsel ineffective here? Because counsel did not revoke bond while Mr. Nash was being... was sentenced in case 2932. He was put on $100,000 Patterson's bond in 804. Once the sentence was pronounced by the judge, counsel did not ask for it to be revoked. Therefore, he was not getting credit for both of those sentences, both of those cases. Did he have a benefit even though he wasn't getting credit? Was there any other benefit to the defendant for the bond not to be revoked? Your honor, no. There was no logical reason why the defense counsel should have not revoked the bond at that point. Justice Burkett a few minutes ago was talking about what the trial court or information that the trial court would have had in front of it at the time sentencing took place for 804. And that time that the defendant was out on a recog bond or because he was recog, when he was released from prison on 2932, then he was able to go to Wisconsin and had a period of about five months in Wisconsin where he apparently led a law-abiding life. Why was that not a benefit to the defendant? He would have gotten out regardless of having the recognizance bond because at that point all the felonies had been resolved except for 804. So at that point, even if he did not have the recognizance bond, counsel could have come in a few days later, presented a motion for at least pending appeal. And unless there were compelling circumstances that were found, the record indicates that he would have been released. I'm sorry, released pending appeal? The outcome of the appeal. Correct. Yes. So you're saying the timing was prejudicial to the defendant. How do we know what the court would have ruled at that point though? That's not in the record. Have we been speculating? What the court would have ruled in 804? Whether there would have been, the court would have allowed the defendant to be released on the 804 because later on, actually there was a bond set. First 50,000 and then it was reduced to 30,000. The, I'm sorry, could you repeat your question? How do we know if you said that what could happen is after the release, then the defendant's attorney could have come in then and asked that he be, after he was released from prison, he could have come in on the 804 case and asked that bond be set and therefore, but we don't know that he could have posted bond then and actually been out. He would have had to be remanded on the 804, right? Correct. If he was out. So I'm trying to ascertain why the defendant was prejudiced as opposed to not sustaining a benefit by the fact that he had previously been recobbed. Because there was no way that counsel knew at that time when he was accepting a cognizant bond that Mr. Nash was going to be successful on appeal. It was taking a chance that he was going to be successful. It was going to be taking a chance that he would be successful or taking the chance that he would not be able to afford bond, which previous, indicates previously that he had, instead of getting this credit for Mr. Nash towards the possible sentence, this was, he spent those 193 days only on 2932. Okay. And then when we look at the concept of ineffective assistance of counsel, are you telling us that we need to just look at this one act or decision that counsel made and judge that as to his ineffectiveness? Or are we to look at all the cases, let's say in this particular, with regard to this particular defendant, and what was accomplished? He was actually put on probation. I mean, originally there was an umbrella bond and he was put on probation and resolved without any prison sentences or credit time. I mean, he was given credit time served in the other two cases, ultimately sent to prison on the 804, but for a reduced charge. So why don't we look at all of that in determining effectiveness of counsel? This is a very specific instance. I'm not challenging. We are challenging the credit that, I'm sorry, the sentence. This is specifically for 193 days of credit. So my question is, are we to look at this in isolation and just look at this one decision that was made or one act and say, because this one act that this was ineffective or in judging the ineffectiveness, are we not to look at more than just the act of asking for a recognizance bond? This is the only case that's being appealed. So the other cases are not relevant in this particular circumstance. On this case, the 804 was reduced. The class felony was reduced. He pled to an attempt, armed violence as opposed to armed violence. So why don't we look at that? The negotiation? Right. His effectiveness with regard to the negotiations and the eligibility or the deal that he was able to get for his client. Why isn't that relevant? The credit wasn't decided in the negotiation. So that was completely separate from that. When there was the sentencing hearing, the judge is very clear in deciding what the credit was. And then he moved on to the substantive issues for the sentencing. The state contested the credit, correct? Correct. And it was not part of the plea agreement? Correct. I'm going to take you back to the sentencing on the first case. 12? 804? No, 1392. When the several witnesses testified in litigation, correct? Correct. And in sentencing the defendant, the court said, with a good network of support, your chances go way up, correct? Correct. And that was in the same context of the court agreeing to give the defendant a recognizance bond on this case, correct? Correct. That happened before that. And then when the court was ruling on the credit, the court referenced back and said, this was a strategy. This is what you asked for, correct? That reference is ambiguous. Why is it ambiguous if we have the record before us where the court said, I'm going to put you on a recognizance bond by agreement? Or that in agreement, you can't tell from the record if it's between the state and the defense or the defense and the court. But then the court also says, at the sentencing, with a good network of support, your chances go way up. Correct. But as opposed to the other quote, which you had mentioned, as the judge saying this was not an accident, that was referring to the when counsel- To follow up on that- Could we please ask so that I can hear her answers? What was it referenced to? Go ahead. That was in reference to counsels in 804 when that decision, when the judge said that about this wasn't an accident, that was in reference to the recognizance bond that was accepted. But whether that was a positive, whether that was a negative, it's difficult to tell from the record. The judge just said that wasn't an accident that Mr. Nash was given that. Well, we know from the record that counsel had continuous contact with the defendant when he was living in Wisconsin with his family, correct? Correct. Because he was reporting to the court when the defendant wasn't there and the court allowed the defendant to surrender as opposed to coming in on a warrant, correct? Correct. So when we are looking at ineffective assistance of counsel, do you agree there's the presumption of effectiveness and if we can determine from the record that there was some strategy, then it's not ineffective assistance of counsel if it was strategy. There's a difference between some strategy and a sound, objectionably reasonable strategy. And that's not what happened here. Without the mitigation in this case, do you think the state would have offered 4 to 15 on a class 1? I can't speculate what the state would have offered, but the facts that we have here... What happened here? In which case? You said that depends on what happened here. I'm asking you to be able to finish your thought. That depends on what happens here. Was I... You said this is not what happened here in response to... As far as the strategy, correct. What happened? What happened was that this bond was awarded and then the client was sentenced and then given three years and it was never revoked. And the record even indicates that counsel likely made a mistake because he argued so effusively for these six funds. And he also mentioned that the appellate court gave the defendant 100,000 bond, which there's no support of that in the record. But it's clear from the record what the attorney intended. And because he didn't revoke the bond or because he was confused about it, Mr. Nash was denied 193 days of credit. Do you have a case that says a defense attorney's decision to not seek to exonerate a bond amounts to ineffective assistance of counsel? There is Nesbitt, which is 2016. And if I may just refer back. That was a jury trial. It was a post-conviction case. That says that he was... There was... It was objectionable, excuse me, objectively reasonable and the prejudice was obvious. Then there's Centeno from 2009, which was this court's decision. I'm sorry, it was the third district. The court said that it behooves counsel to withdraw a bond so that the defendant can earn credit for an eventual sentence. May I have one more? And finally, there's Robinson, 1996, Illinois Supreme Court case. And that allowed the defendant to be given credit for serving time on both sentences. In case you haven't figured it out, the gist of where my colleagues are coming from is that the way this case works out, the defendant gets a very minor sentence in relation to what he was originally charged with. And it could be that the defendant that the late sentence that he received, as opposed to the heavier sentence that he might've gotten, is evidence that this decision not to exonerate the bond was a strategy that would allow him upon the release from the penitentiary to, without jeopardy or without the possibility or probability of being incarcerated and being refused a bond or a bond that he couldn't honor or meet, that by allowing him to be immediately released from prison and go to Wisconsin and to have a support group and then to indicate that he was rehabilitatable and all the good things that came out of the sentencing hearing that gave him a lighter sentence, that when you weigh the sentence and the plea agreements or plea agreement that he received vis-a-vis this alleged error that was he should've exonerated the bond, you realize that his failure to exonerate the bond meant that 193 days of credit, could've been more, could've been less, who knows. But I guess it would've been 193 days because the judge had already indicated how much credit he was going to get. Be that as it may, is the strategy of keeping the bond intact and losing 193 days a valuable quid pro quo for the benefits he received which he might not have received because of the evidence of rehabilitation and his good citizenship while he was on bond. So would you comment on weighing these things, determining whether or not this was a proper strategy, was it reasonable and so on and so forth? Again, I do not think that it's, and the case shows that it is not a proper strategy because 604A3 allows the defendant to get out because of the state interlocutory appeal that was pending. So even had there never been a bond, then counsel would have likely come forward with a motion to release pending the outcome of the appeal. So he could not have been held regardless. So you're saying that when the appellate court reversed the trial court on the orders of suppression, that he, a good lawyer, would have then gone in and moved for a bond? No, I'm saying that when he got out for MSR on 2932, that he could not have been held on 804. So that time was his regardless. He couldn't have been held because the appeal hadn't been decided yet? Correct. So if he were, if the bond had been exonerated, he would have been out with no bond because the appeal was pending. And then when the appeal came down, then some procedure would have had to take place to either enforce a bond or leave it as it were? Correct. And that's what happened. Well, it didn't happen because the state didn't have to issue a warrant. The defense counsel agreed to surrender his client. And then the bond was set $50,000 initially by Judge Strickland, which then got reduced. And by the way, Judge Shaines, when he reduced the defendant's bond from $50,000 to $30,000, he commented on the good behavior the defendant had demonstrated while on bond, correct? Correct. If your honors have no other questions. You will have an opportunity to make rebuttal. Thank you.  Good afternoon, your honors. Good afternoon. My initial comment is that you are correct. You do not look at a single incident by defense counsel in isolation. You look at the overall context. And in regard to that, I want to briefly go over a little bit of the timeline because I think that'll help clarify. On April 22nd, the defendant was sentenced in 2932, which is the discussion about the recon bond in 804 occurred before the trial judge imposed sentences, the sentence on that date. On that date, well, initially there were, I think, four charges. At the April 22nd date, two of the charges had been resolved by guilty plea and the defendant effectively got time served. So there's only the 2932 and then the 804. At that time, 804 is up at the appellate court pending on a state appeal. I think we can all acknowledge that it is an uphill battle for anyone to overturn a decision from the trial court. So the presumption at that point is that the trial court's ruling suppressing the evidence will in all likelihood be maintained. Later we learned that's not so, but at that time when defense counsel is acknowledging the recon bond and accepting that, that is what has happened. It's on a state appeal. So defendant's chances are good in that case. The defense counsel was arguing for work release. For the defendant, the judge ended up giving him three years, which due to time credit and other things turned out to be the 193 days defendant is asking for now. And defendant completed that sentence on October 31st. It's not until November 18th that this court reversed the suppressing issue. So defendant has completed his sentence, his three years with 193 days before this court ever reversed that state appeal. Then on February 19th, Judge Strickland imposed the $50,000 bond. There's a quick date for Judge Shaines. He reduces the bond to $30,000. And I believe on March 11th, yes. March 2nd, defendant made the bail bond and that's at C-147. If I understand you correctly, then the appeal came down on October 30th? No, November 18th. That's C-117 in the record? November 18th, 2015. Yeah. And so there was roughly 17 days that if there hadn't been a bond, the state would have had to file a warrant if they wanted to impose some sort of bond on him. If the bond had been released pursuant to statute or been exonerated. I didn't go back and read the transcripts for any bond for the appellate court in the initial suppression. So I don't know the exact circumstances, but the defendant had completed his sentence on the 31st. At that point, the state could have gone in if they felt they had compelling reasons to ask for a bond. They didn't do that. But he was wearing an ankle bracelet and a GPS. Yes, he's still being monitored after he's released. He's allowed to go up to Wisconsin. He's living with his mother. He's working in a business with her. His children are located in Wisconsin. So he's able to associate with his family. And the court is correct. And his defense counsel argued very vigorously that he had an impeccable performance when he's up in Wisconsin. Initially, when they start talking about the bond, it's four months. By the time Judge Shane actually sets the bond at $30,000, it's been six months. So he's had those six months to show his rehabilitative potential. And you're correct. The court did take that into consideration. And, in fact, defense counsel did vigorously argue and get the charges reduced from armed violence to attempt armed violence. So... Not firearm armed violence, correct? It's a class one probationable? I believe so, yes. But Judge Shane's also had his lengthy prior record to consider with regard to sentencing on 804. Isn't that correct? Dating back from juvenile days and numerous times on probation, as well as his gang affiliation and his role within the gang. Isn't that correct? He did. And certainly he mentions a lot of that when he's sentencing the defendant in 2932. And that's when he makes the comment, you know, this is your chance to prove yourself. And notes the family support. And then the defendant did take advantage of that. He proved himself when he was out, you know, in Wisconsin before the reversal of the state appeal. And then coming up for the charges in 804. And he was wearing a bracelet, a GPS bracelet, because of his MSR. Is that the reason? Yes. And I think a lot of this is also... It's very important to look at it, not in hindsight, but what was happening at the time. And that was why I went over the timeline and emphasized that when his defense counsel accepts the RECOG bond or agrees to the RECOG bond in 804, it's a state appeal. And at that point, you know, the state has filed the certificate of impairment. So, you know, there's a good chance that without that evidence, and it's currently suppressed, that the state will be unable to bring him to a successful conviction. If he does not have... Excuse me, say that again, please. Okay. If this court had not reversed the trial court's suppression of the evidence in 804, the state has filed a certificate of impairment. So that's an indication that without that evidence, they may not be able to go forward to assess prosecution. So that's what defense counsel is looking at at the time they talk about the RECOG bond, is the state may not be able to go forward on that other case, in which case there is no sentence against which sentence credit could be credited. It's more important to get the defendant out and give him his chance for rehabilitation than to try and get 193 days. And as I emphasized in my brief, and as you've picked up, the 193 days that he might have gotten if they had revoked bond, I don't think is anywhere close to the reduction that he successfully achieved because the state is willing to deal down the charges. It goes from, I believe it was a 60-year potential sentence, to then the state agrees to a cap of 15 and he actually gets a 10-year sentence. But he also agreed that he would agree to a minimum of six, so the range of the trial court agreed to that range and he got the middle of it, correct? Correct, very correct. Can you comment on counsel's argument though that despite and counsel acknowledges that the result was very good for the defendant, that we can still look at this particular strategy in isolation and say it's ineffective, that it's bad lawyering? I agree with that on two levels. First, you don't look at a single act. You look at counsel's overall performance. I believe that is mentioned in Durgan and other cases. I don't believe that this was an error. As your honors have pointed out, it was a strategic decision. As I've emphasized, at the time that he made that, 804 is on a state appeal. Again, there's a good chance that there won't be any conviction or any sentence against which credit could be allocated unless this court reverses that suppression order. And it didn't do that until after the defendant completed his sentence in that case. So then what was the strategy? If the appellate court probably wasn't going to reverse, then why bother? I don't think that there was any indication that the appellate court was... No one knew what you were going to do. So what was the strategy then? Well, statistically speaking, if the defendant has prevailed on a motion to suppress, then the state has to overturn that decision. And overturning any decision by the trial court, I can't cite specifically anything, but it's either 75-25 or 80-20 to overturn. So at that point, there's a good chance the defendant will never be brought to trial on 804. And that's what he's looking at when he agrees to the reconfirmation. So he just wants to get him out. He's not worried about credit, is what you're saying. Correct. He just wants him out when the parole starts. So that's his strategy. Yes. I see. What evidence in the record is there of that, that he even thought about that? Well, he makes no argument when the court says, I'm going to give you the recon bond. And as your honors have... I thank you for pointing out rule 60483, defendant shall not be held in jail or bond during penalty repeal by the state. Unless there are compelling reasons. So he is getting out according to the Supreme Court rule on that. It would be very odd for defense counsel to argue, I want bond. That would be an indication that he believed there was a weakness in the state's appeal and they might win, which he probably doesn't. He still vigorously argued that the defendant wasn't guilty. And he was researching other motions, because the suppression motion came fairly early and got granted. So he said, I've got other motions I want to raise in that case. He was not giving up and acknowledging that it was going to be a slam dunk case for the state. And he did continue to fight. He did. He got the tape, the squad car tape edited. Correct. And ultimately, the case was set in a posture for trial after he succeeded on those motions and then the final plea agreement. Correct. And all that I think needs to be taken in context. You can't simply look back and know at that point that, oh, yes, this court subsequently reversed the suppression. So we're going to trial on that. Are there any other questions or? All right. I ask that you affirm the defendant's sentence. Yes. Thank you. Thank you. Ms. Fick. Thank you, Your Honors. I'd like to respond to a few of the points that counsel made. First of all, the recognizance bond is not what made those five months that he was out on MSR possible. 60483, unless there were compelling circumstances, would have allowed him to get out once he was done serving a three-year sentence in 2932. Second, counsel discussed that there was no assurance that there would be a sentence in 804 because of the appeal. However, in Centeno, the 2009 third district case that I cited, it specifically states that it behooves counsel to earn credit toward eventual sentences. So the strategy would be there that you have that credit in case you do go. And additionally, I'd like to talk about the isolation. Looking at this case in isolation, the prejudice is great here and it's quantifiable because it's 193 days of this man's freedom. And that is a significant error. He may have performed well in other areas, but this was an error that was made that should be reversed. You're saying this is capable of being taken in isolation or that it is separable? Correct. Mutually explosive? Yes. And what case supports are looking at this in isolation? As opposed to, as Judge McLaren indicated to you at the end of your main argument, balancing the entire effect of what his attorney, what the outcome was. I'm not familiar with the case that specifically says that, but in Nesbitt, Centeno, and Robinson, they do look at them in isolation. The Illinois Supreme Court just said a couple of weeks ago in Dupree that we don't look at decisions, individual decisions in isolation. We look at the entire performance and the result. I think even in that context, Your Honor, this error was large. It was 193 days of this man's freedom. So even in the context of everything, it could still be granted this credit to him. If you have no other questions, I ask that this court correct me to include 193 days of sentencing credit for Mr. Nash. Okay. Thank you. Court is adjourned. The case will be taken under advice.